IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Joanne McGoldrick, et al.,

    Plaintiffs,

v.

Angela Bradstreet,

    Defendant.

Case No: 2:08-cv-1

Judge Graham

Opinion and Order

This matter is before the Court on plaintiffs' motion to reopen the case for the purpose of enforcing a 2008 Consent Decree. The Consent Decree governed how the defendant, the Labor Commissioner for the State of California's Department of Industrial Relations, would handle certain benefits claims filed by employees of Nationwide Mutual Insurance Company. Plaintiffs, which include Nationwide and its Benefits Administrative Committee, allege that the Labor Commissioner has recently taken or threatened to take action in violation of the Consent Decree.

Plaintiffs' motion to reopen puts at issue the Court's authority to hear the current dispute. In plaintiffs' view, the Court has continued and inherent jurisdiction over the enforcement of its own order, one which contained provisions having prospective injunctive effect. The Labor Commissioner argues that the Consent Decree itself contained a one-year limitation on the Court's jurisdiction and that any dispute arising afterward must be treated as a new, breach of contract matter.

For the reasons that follow, plaintiffs' motion is granted.

I.     Background

A.     The 2008 Lawsuit and Consent Decree

Plaintiffs originally filed this suit in 2008, alleging that Nationwide sponsored an employee welfare benefit plan known as the "Your Time Plan." The Benefits Administrative Committee administered the Your Time Plan on behalf of Nationwide employees. The complaint asserted that the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, et seq., exclusively governed the Plan and preempted the application of state law. The complaint further asserted that the State of California's wage laws with respect to vacation benefits were inconsistent with the vacation

1

wage benefits provided under the Your Time Plan. The Labor Commissioner, who was Angela Bradstreet at the time the complaint was filed, had allegedly adopted a position that she would enforce California law in determining claims made by Nationwide employees for accrued vacation pay. The complaint sought preliminary and permanent injunctive relief prohibiting the Labor Commissioner from processing or hearing claims filed against Nationwide under state wage laws.

The parties reached a standstill agreement regarding plaintiffs' request for preliminary relief. On September 26, 2008, the Court granted the parties' motion to approve a Consent Decree. Under the Decree, the Labor Commissioner (referred to as the "Agency" in the Decree) stipulated as follows: "[T]he Agency agrees that at the present time, and for all periods since October 24, 2005, the Your Time Plan is and was an ERISA welfare benefit plan and California's vacation benefit laws are preempted as they relate to the Your Time Plan." Consent Decree § I.

The Decree established "an agreed protocol for the handling of claims filed with the Agency regarding the Your Time Plan." Id. The protocol was set forth in Section IX of the Decree, under the heading of "Injunctive Relief." The stated purpose of Section IX was to "establish a protocol for the processing of California Your Time Claims by the Agency and to provide the Agency with a mechanism for assessing whether the Your Time Plan continues to be maintained and funded in the same manner as it is currently maintained and funded." Id. at § IX.A. The protocol provided that the Agency would dismiss a claim for payment of benefits that fell under the Your Time Plan. See id. at § IX.A.1. It also directed the Agency to notify Nationwide of claims that the Agency did not dismiss on its own initiative and give Nationwide an opportunity to respond. See id. at § IX.A.2.

The protocol provided the Agency with an opportunity to notify Nationwide when it believed it was "no longer appropriate to follow the protocol." Id. at § IX.A.4. The Agency could base such a determination "on account of changes in applicable law or existence of new facts." Id. The Decree did not define the terminology "changes in applicable law" or "existence of new facts." After making its determination, the Agency was required to notify Nationwide "at least 60 days before the proposed termination date of this protocol." Id. The parties were then required to "meet and negotiate in an attempt to establish a new protocol." Id. The Decree provided that "if no agreement is reached by the proposed termination date, this Decree and protocol shall be terminated (unless extended by agreement of the parties)." Id.

The Consent Decree contains two other sections which are relevant to the Court's analysis of the motion to reopen. In Section VIII, entitled "Compliance and Dispute Resolution," the Decree provided: "If Nationwide believes that the Agency has failed to comply with any provision of this

2

Consent Decree, it may petition this Court to enforce the Decree." Id. at § VIII.A. Nationwide first had to provide written notice to the Agency of the nature of the dispute and allow the Agency 60 days to address the issue. Id. The Decree provided as follows if the parties could not resolve their dispute:

> After 60 days have passed with no resolution or agreement to extend the time further, Nationwide may petition this Court for compliance with this Decree, seeking all available relief, including, but not limited to, an extension of the term of the Decree for such period of time as the Court deems necessary and appropriate to remedy the breach of the Decree.

Id. at § VIII.C.

Section IV of the Decree was entitled "Effective Date and Duration of Decree." It provided that the Decree was effective immediately. Id. at § IV.A. It further provided:

> The Court shall retain jurisdiction over this Decree for a period of one (1) year after the Effective Date; however, the protocol set forth in section IX.A shall continue unless and until terminated in accordance with the provisions set forth therein.

Id. at § IV.B.

The Court entered the Consent Decree on its docket on September 26, 2008. On the same day, the Clerk of Court administratively closed the case.

### B. The Current Dispute and the California Litigation

A former Nationwide employee filed a claim for vacation wages with the California Department of Industrial Relations on February 11, 2019. See Doc. 23-1 at PAGEID 346-48. The claim sought payment of vacation benefits that were unused at the time of the termination of employment. The Commissioner served Nationwide with a notice of the claim on February 15, 2019 and scheduled for the parties to have an in-person conference with the Commissioner's Office on February 22, 2019. See id.

It appears from the limited record before the Court that the February 22 conference did not take place. In any event, on February 22 counsel for the Commissioner provided written notice to Nationwide that the Commissioner was invoking Section IX.A.4 of the Consent Decree. See id. at PAGEID 332. The Commissioner's letter asserted that there had been a "change in applicable law" or "new facts" that warranted initiating the protocol's provision for terminating the Decree. Id.

The Commissioner cited a November 14, 2018 federal district court ruling in a putative class action brought by former employees against Nationwide. The United States District Court for the Eastern District of California held that "vacation benefits payments for the Your Time Program constitute a 'payroll practice' within the meaning of 29 C.F.R. § 2510.3–1, rather than an employee welfare benefit plan covered by ERISA. Thus, ERISA does not preempt Plaintiffs' state law claims

3

as to the vacation benefits." Mostajo v. Nationwide Mut. Ins. Co., 351 F.Supp.3d 1301, 1308 (E.D. Cal. 2018).

The Commissioner asserted that the Mostajo decision was a change in applicable law: "In light of this court ruling, it is no longer appropriate for the Labor Commissioner to dismiss vacation wage claims filed by Nationwide's employees or former employees on the ground of ERISA preemption." Doc. 23-1 at PAGEID 333. The February 22, 2019 letter provided 60 days' notice under the protocol that the Commissioner intended to terminate the Consent Decree on April 23, 2019. The letter invited Nationwide to request a meeting to attempt to establish a new protocol.

Nationwide responded on February 28, 2019. It stated a desire to meet and negotiate but claimed that the Mostajo ruling was "insufficient to establish the existence of" a change in applicable law or new facts because the ruling was subject to a motion for reconsideration, subject to appeal and at odds with decisions of other federal courts. Id. at PAGEID 336.

The parties met in California on March 21, 2019. They were unable to reach any agreement regarding the protocol. Id. at PAGEID 342. Counsel for the Commissioner did, however, represent that any pending vacation wage claims filed before April 23, 2019 by current or former Nationwide employees would be dismissed without prejudice. See id. at PAGEID 342-43.

Also on March 21, 2019, the District Court for the Eastern District of California issued an order granting in part and denying in part Nationwide's motion for reconsideration of the November 14, 2018 order. The court adhered to its ruling on the ERISA preemption issue, but it stated in reference to this Court's 2008 Consent Decree: "Because the Labor and Workforce Development Agency is bound by the Consent Decree – a final judgment – and could not bring California-law based claims with respect to the vacation benefits, Plaintiffs likewise cannot do so acting as the Agency's proxy or agent under [California's Private Attorneys General Act]." Mostajo v. Nationwide Mut. Ins. Co., No. 2:17-CV-00350-JAM-AC, 2019 WL 1298990 at *3 (E.D. Cal. Mar. 21, 2019).

In addition, the court certified its November 14, 2018 ruling for interlocutory appeal, finding there to be "substantial ground for a difference of opinion on several issues relating to the question of ERISA-preemption for the vacation benefits claim." Id. Nationwide's petition for leave to file an interlocutory appeal is currently pending before the Ninth Circuit Court of Appeals.

Turning back to this litigation, on April 16, 2019 plaintiffs filed a motion to reopen the case and prevent the Commissioner from unilaterally terminating the Consent Decree and from hearing vacation wages claims filed against Nationwide with the Commissioner's Office.

4

On April 19, 2019 the Court conducted a telephonic conference with the parties. Following the conference, the Court issued a Standstill Order directing the parties to comply with the Consent Decree pending the Court's determination of whether it has authority to exercise continued jurisdiction under the Decree. See Doc. 32.

### C. The Newly-Filed Suit

On April 22, 2019, Nationwide filed a new action in this Court against Carlos Torres, in his official capacity as Assistant Chief Labor Commissioner for the State of California's Department of Industrial Relations, Division of Labor Standards Enforcement. See Bell v. Torres, No. 2:19-cv-1550 (S.D. Ohio). Nationwide seeks a declaration that its Your Time Plan is governed exclusively by ERISA and that any California wage laws are preempted as they relate to vacation benefits. Nationwide acknowledges that the new suit is brought to protect its interests if the Court declines to grant the motion to reopen the 2008 lawsuit. See Doc. 5 at PAGEID 21-22 in Case No. 2:19-cv-1550.

Currently pending in the new action is the Commissioner's motion to dismiss or, in the alternative, transfer venue to the United States District Court for the Eastern District of California, where the Mostajo litigation was brought and where the Commissioner's Office in Fresno is located.

## II. Jurisdiction

Nationwide moves to reopen the 2008 case and have the Court enjoin the Labor Commissioner from unilaterally terminating the Consent Decree. Nationwide asserts that the Commissioner must have the Court's approval to terminate the Decree and that the Commissioner's posture of being ready to hear vacation wage claims filed by Nationwide employees is contrary to the Decree. The Commissioner argues that the Court lacks jurisdiction over this dispute.

A federal court may exercise jurisdiction over an action for the limited purpose of determining whether or not it has jurisdiction over the action. See Chicot Cnty. Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 376-78 (1940) (federal court has jurisdiction to resolve whether it has authority to exercise jurisdiction over a matter); Sweeton v. Brown, Nos. 90-1800, 90-1807, 1991 WL 181751 at *6 (6th Cir. Sept. 17, 1991) ("A federal court has jurisdiction to determine whether it has jurisdiction over the subject matter of an action.").

The presence of the Consent Decree provides the only arguable grounds by which the Court could, in the 2008 action, exercise jurisdiction over the present dispute between Nationwide and the

Labor Commissioner.[1] Had the suit ended in a settlement agreement with a stipulated dismissal, the Court would lack authority to entertain a motion to enforce the settlement agreement. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 381-82 (1994) (holding that a federal district court does not have authority to enforce a settlement agreement entered in one of its cases, absent the court incorporating the settlement into a court order with the parties' consent). But where there is a consent decree, "a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist." Id. at 381.

"A consent decree is essentially a settlement agreement subject to continued judicial policing." Williams v. Vukovich, 720 F.2d 909, 920 (6th Cir. 1983). As an initial matter, there is no dispute that the Consent Decree is in fact a consent decree. Consent decrees have "two key attributes that make them different from private settlements." Pedreira v. Sunrise Children's Servs., Inc., 802 F.3d 865, 871 (6th Cir. 2015). The first is a retention of "jurisdiction to enforce the decree." Id. "Second, a consent decree puts 'the power and prestige of the court behind the compromise struck by the parties.'" Id. (quoting Williams, 720 F.2d at 920). Here, the Consent Decree was entered upon the Court's approval, and it provided for the Court's retained jurisdiction, granted prospective injunctive relief and gave Nationwide a mechanism to petition the Court to enforce its terms.

In determining whether the Consent Decree authorizes the Court to exercise jurisdiction over the present dispute, the Court looks to the "four corners of the consent decree." Shy v. Navistar Int'l Corp., 701 F.3d 523, 530 (6th Cir. 2012). The Commissioner understandably points to the first part of the Duration of Decree provision, which states, "The Court shall retain jurisdiction over this Decree for a period of one (1) year after the Effective Date; . . . ." Consent Decree § IV.B. But the rest of the provision states in the same sentence: "however, the protocol set forth in section IX.A shall continue unless and until terminated in accordance with the provisions set forth therein." Id.

The question presented is whether the Court's jurisdiction ended after one year or whether jurisdiction over the protocol was retained beyond the first year. The Court finds that the Duration of Decree provision, standing alone, is reasonably susceptible of two different interpretations. One could interpret the provision to mean that the Court's jurisdiction ceased after one year and was followed by a period during which the parties agreed to follow the protocol until the Commissioner terminated it. After the first year, the protocol provision would be treated as a private settlement

---

[1] In ruling on Nationwide's motion to reopen the 2008 suit, the Court does not express any opinion on the jurisdictional and venue issues raised by the Commissioner's motion to dismiss or transfer venue in the newly-filed suit.

agreement and any claim that one party was violating the protocol could be brought as a separate action for breach of contract. Weighing in favor of this interpretation is that the second part of the Duration of Decree provision does not say, "however, *the Court's jurisdiction over* the protocol set forth in section IX.A shall continue unless and until . . . ."

Even so, one could also reasonably interpret the provision to mean that the Court's jurisdiction would generally end after one year, but would continue over the protocol. The key word for this interpretation is "however." The first part of the provision established a general rule; the clause following "however" set forth a qualifier or exception. And, given that the protocol was the centerpiece of the Decree, it naturally would be the one aspect of the Decree over which the Court would retain jurisdiction. Weighing in favor of this interpretation is that the second part of the Duration of Decree provision does not say, "however, *the parties on their own accord will continue to follow* the protocol set forth in section IX.A . . . ."

In resolving the ambiguity, the Court looks to other provisions of the Consent Decree and concludes that the Court retained jurisdiction over the protocol after the first year. Importantly, the protocol itself was placed in Section IX, entitled "Injunctive Relief." The Court and parties thus expressed their intent in the Decree that the protocol be considered as a form of injunctive relief. By definition, injunctive relief comes by way of court order and directs one or both parties as to what they may or may not do. See Black's Law Dictionary, *Injunction* and *Injunctive* (10th Ed. 2014); see also Birmingham Fire Fighters Ass'n 117 v. City of Birmingham, 603 F.3d 1248, 1254 (11th Cir. 2010) (stating that for purposes of 28 U.S.C. § 1292, "the classic definition of an injunction" is "a clear and understandable directive from the district court" that is enforceable and gives "some or all" of the relief sought by a party") (internal quotation marks omitted). When reading the Duration of Decree and Injunctive Relief sections in conjunction, the Court finds that after the first year of the Decree, the Court's provision of injunctive relief relating to the protocol continued to be in effect. The Court itself ordered the Commissioner how it would handle claims for benefits covered by the Your Time Plan and its order extended beyond the Decree's first year. This cuts against the Commissioner's proposed interpretation that the parties were left to themselves after the first year to abide by the protocol as though it were a settlement agreement.

Section VIII, entitled Compliance and Dispute Resolution, provided a mechanism for court-involved enforcement of the Decree. Namely, it authorized Nationwide to "petition this Court to enforce the Decree" if it believed the Commissioner had "failed to comply with any provision of this Consent Decree." Consent Decree § VIII.A (emphasis added). The provision did not contain any

7

time limits by which Nationwide had to file a petition. In other words, the Decree does not state that Nationwide may "petition this Court *within one year of the Effective Date* to enforce the Decree." This too runs contrary to the notion that the parties were left on their own after one year. And again, with the protocol serving as the centerpiece of the Decree, it would seem apparent that the protocol would be the most likely aspect of the Decree that Nationwide would seek to enforce.

The Commissioner offers a valid point in defense of its interpretation. The particular provision which the Commissioner cited as the basis for terminating the protocol, Section IX.A.4, did not specify a role for the Court's involvement:

> At any time after the date of entry of this Decree, the Agency may determine that it is no longer appropriate to follow the protocol set forth herein, on account of changes in applicable law or existence of new facts. In such event, the Agency shall notify Nationwide at least 60 days before the proposed termination date of this protocol. The parties shall meet and negotiate in an attempt to establish a new protocol and, if no agreement is reached by the proposed termination date, this Decree and protocol shall be terminated (unless extended by agreement of the parties).

Consent Decree § IX.A.4. The Commissioner contends that the provision allows him to unilaterally terminate the Decree.

True, the language of this provision suggests that the Court has no role in the termination process. But just because the Court does not participate in the parties' back-and-forth process does not compel the conclusion that the Court lacks jurisdiction over disputes concerning the protocol and the Commissioner's attempts to terminate the Decree. To put the provision in context, it is found within the Injunctive Relief section and appears in the same Decree as provides Nationwide with a judicial-enforcement mechanism regarding "any provision" of the Decree. The Court, viewing the Decree as a whole, finds that the Decree made every aspect of the protocol – including the one now invoked by the Commissioner – into a component of court-issued injunctive relief subject to judicial enforcement in the event of a dispute.

The Compliance and Dispute Resolution section expressly authorizes the Court to extend the term of the Decree "for such period of time as the Court deems necessary and appropriate." Consent Decree § VIII.C. So, the Commissioner may invoke and follow the protocol for termination, but the Court still has the authority to intervene and prevent the Decree from being terminated. That's what happened here – the Commissioner gave notice of a proposed termination date of April 23, 2019, Nationwide petitioned the Court and the Court intervened with a Standstill Order on April 19.

The Court's interpretation of the Decree should not upset the reasonable expectations of the parties. The Decree did not define "changes in applicable law" or "existence of new facts" – the two

8

grounds on which the Commissioner could initiate a proposed termination of the protocol. It is foreseeable that attorneys would later disagree over the meaning and application of those terms. In the Court's view, a disagreement over this provision would be one of the more likely disputes, if not the most likely dispute, for which Nationwide would exercise its right under the Compliance and Dispute Resolution section to petition the Court to enforce the Decree. It falls on the Court, as issuer of the Decree and the injunctive relief provided therein, to interpret and apply the terminology to the circumstances at hand. Cf. Waste Mgmt. of Ohio, Inc. v. City of Dayton, 132 F.3d 1142, 1146 (6th Cir. 1997) ("Courts, therefore, have a duty to enforce, interpret, modify, and terminate their consent decrees as required by circumstance.") (footnote omitted).

The parties devote much of their briefs to a different question: if the Decree provides for only one year of Court supervision or jurisdiction, does the Court nonetheless have inherent power to exercise continued jurisdiction over the Decree? In the Sixth Circuit, considerable support exists for Nationwide's argument that a trial court has inherent authority to exercise continued jurisdiction:

> Although interpretation of a consent decree is to follow the general rules prescribed in contract law, the courts, in effectuating the purposes or accomplishing the goals of a decree, are not bound under all circumstances by the terms contained within the four corners of the parties' agreement. . . . [E]ven if the structure, language, and context of the decree do not combine to render the district court's interpretation of the text permissible, the district court has the inherent equitable power to modify a consent decree if satisfied that the decree has been turned through changing circumstances into an instrument of wrong.

Waste Mgmt., 132 F.3d at 1146 (internal quotation marks, alterations and citations omitted). And in an unpublished decision, the Sixth Circuit found:

> [A]ppellants assert that, if the district court did have jurisdiction over this action initially, it lapsed with the end of the initial monitoring period in June 1985. This is because the 1981 consent judgment provided for jurisdiction only during the monitoring period. However, the court has an independent duty to ensure that the terms of the decree are effectuated since an approved consent decree is not merely a compact between former litigants but is a court order.
>
> We have held that a case governed by a consent decree should not be closed when there are pending claims that the defendants have violated the decree.

Sweeton, 1991 WL 181751 at **6-7.

As outlined above, the structure, language and context of the Consent Decree lead the Court to conclude that it retained jurisdiction beyond the first year to resolve disputes regarding the protocol. In the alternative, the Court finds under Sixth Circuit case law that it has inherent authority to enforce the Decree. The circumstances presented here satisfy the Court that it must act to effectuate the terms

9

of the Decree. The Decree memorializes the Commissioner's agreement that the Your Time Plan is "an ERISA welfare benefit plan and [that] California's vacation benefit laws are preempted as they relate to the Your Time Plan." The Commissioner further agreed not to hear claims relating to Your Time Plan benefits.

Now the Commissioner asserts that there has been a change in applicable law – the Mostajo ruling. The Court, however, at this preliminary stage will not allow the Commissioner to terminate the Decree. There has not been a change of law so clear as to be indisputable, such as a change to the ERISA statute or a binding United States Supreme Court or Sixth Circuit ruling. Indeed, the only development in the law of this Circuit since the Consent Decree is at odds with Mostajo. In Sherfel v. Gassman, this Court held, and was affirmed by the Sixth Circuit, that Nationwide's Your Time Plan is an ERISA welfare benefit plan and that ERISA preempted Wisconsin law as it related to short-term disability benefits. Sherfel v. Gassman, 899 F.Supp.2d 676 (S.D. Ohio 2012), *aff'd sub nom*. Sherfel v. Newson, 768 F.3d 561 (6th Cir. 2014).

While the Court agrees with the Commissioner that the Decree should not last in perpetuity, see Sweeton, 1991 WL 181751 at *7, the Court finds that its exercise of jurisdiction is appropriate under the circumstances, see Shy, 701 F.3d at 532-34 (affirming the district court's enforcement in 2011 of its consent decree issued in 1993). In reopening the case the Court will afford the Commissioner an opportunity to demonstrate why the Decree should be terminated.

### III. Conclusion

Accordingly, plaintiffs' motion to reopen the case (doc. 23) is GRANTED. The Consent Decree remains in full force and effect and the Court retains jurisdiction over any disputes regarding the protocol. The Commissioner is hereby ENJOINED from terminating the Consent Decree until further order of the Court.

The Commissioner may move within sixty days to dissolve or terminate the Decree "on account of changes in applicable law or existence of new facts." Nationwide may file a response brief within twenty-one days of the filing of the motion, and the Commissioner may file a reply brief fourteen days thereafter. See S.D. Ohio Local Civ. R. 7.2(a)(2).

s/ James L. Graham<br>
JAMES L. GRAHAM<br>
United States District Judge

DATE: August 1, 2019